UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AARON A. TREDENICK,

        Plaintiff,                              Hon. Paul L. Maloney

v.                                             Case No. 1:23-cv-785

NATIONWIDE AGRIBUSINESS
INSURANCE COMPANY,

        Defendant.

_____/

**REPORT AND RECOMMENDATION**

Pro se Plaintiff Aaron TreDenick filed his complaint in this action on July 24, 2023, against Defendant Nationwide Agribusiness Insurance Company. I subsequently granted TreDenick's application to proceed *in forma pauperis*. (ECF No. 4.)

Presently before me is Nationwide's Motion for Judgment on the Pleadings Pursuant to Fed. R. Civ. P. 12(c). (ECF No. 25.) The motion is fully briefed and ready for decision. For the reasons that follow, pursuant to 28 U.S.C. § 636(b)(1)(B), I recommend that the Court **GRANT** the motion and **DISMISS** TreDenick's amended complaint **with prejudice**.

**I.    Background**

**A.    Facts**

TreDenick and his wife owned a farm in Sheridan, Michigan, which they insured through Nationwide. On March 20, 2017, a fire occurred on the farm's large pole barn, which contained a substantial amount of farm equipment and other personal property. Much of the property was destroyed. The TreDenicks submitted a proof of loss and supporting documentation to Nationwide. When Nationwide failed to pay the claim, the TreDenicks sued Nationwide in the Kent County

Circuit Court. *See TreDenick v. Nationwide Agribusiness Ins. Co.*, No. 349887, 2021 WL 1337837, at *1–2 (Mich. Ct. App. Apr. 8, 2021).

On April 13, 2018, the parties mediated the claims in the Kent County Circuit Court litigation. At the conclusion of the mediation, they reached a settlement and signed a Settlement Agreement (referred to herein as the Mediation Agreement). (ECF No. 17-5.) Pursuant to the Mediation Agreement, Nationwide agreed to pay the TreDenicks $950,000—approximately 50% of their claim—and the TreDenicks agreed to release Nationwide and all related individuals and entities from all claims alleged, and which could have been alleged, in the litigation arising out of the loss of the pole barn and its contents. (ECF No. 17-5.)

On April 17, 2018, Nationwide issued a check jointly payable to the TreDenicks and their counsel, John D. Tallman, in the amount of $950,000. (ECF No. 17-7.) On April 19, 2018, attorney Tallman sent Nationwide's counsel a letter accusing Nationwide of various breaches of the Mediation Agreement and threatening to amend the complaint to add a claim for breach of the Mediation Agreement and a claim for fraud. (ECF No. 17-6.) In response, Nationwide filed a motion to enforce the settlement, which the court granted. It appears that the court ordered Nationwide to pay attorney Tallman the entire $950,000, of which $800,000 was to be released to the TreDenicks and Tallman immediately. The court also ordered that attorney Tallman hold the remaining $150,000 in constructive trust pending further instructions from the court. In subsequent orders, the court ordered that certain amounts be released to the TreDenicks' prior attorney and to Sidney State Bank and that the remaining amount be released to the TreDenicks.

**B.     Procedural History**

TreDenick filed his complaint on July 24, 2023. On August 28, 2023, Nationwide filed a motion for more definite statement. (ECF No. 7.) On September 13, I denied Nationwide's motion without prejudice for failure to comply with Local Civil Rule 7.1(d). (ECF No. 10.) Nationwide

2

refiled its motion for more definite statement on September 19, 2023. (ECF No. 12.) On September 26, 2023, I granted Nationwide's motion because TreDenick did not oppose the requested relief. TreDenick was afforded the opportunity to file an amended complaint but was directed to separately enumerate his causes of action in his amended pleading. (ECF No. 15.) TreDenick filed his amended complaint on October 6, 2023. (ECF No. 17.) Nationwide filed its answer on October 30, 2023, and attached a complete copy of the insurance policy. (ECF Nos. 23, 23-1.)

## II. Motion Standard

In deciding a motion for judgment on the pleadings under Rule 12(c), a court applies the same standard applicable to motions under Rule 12(b)(6). *Jelovsek v. Bredesen*, 545 F.3d 431, 434 (6th Cir. 2008). A Rule 12(b)(6) motion to dismiss for failure to state a claim on which relief may be granted tests the legal sufficiency of a complaint by evaluating the allegations therein in a light most favorable to the plaintiff to determine whether they state a valid claim for relief. *See In re NM Holdings Co., LLC*, 622 F.3d 613, 618 (6th Cir. 2010). When considering a Rule 12(b)(6) motion, the court must dismiss a claim unless the "[f]actual allegations [are] enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (internal citations and footnote omitted).

As the Supreme Court has held, to satisfy this rule, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* If the complaint simply "pleads facts that are merely consistent with a

3

defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotation marks omitted). As the Court further observed:

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged— but it has not "show[n]"—"that the pleader is entitled to relief."

*Id.* at 678–79 (internal citations omitted).

Because TreDenick is proceeding pro se, I must construe his pleading more liberally than pleadings drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). But this liberal pleading standard "is not without its limits, and does not 'abrogate basic pleading essentials in pro se suits.'" *Clark v. Johnston*, 413 F. App'x 804, 817 (6th Cir. 2011) (quoting *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)). Stated differently, "[l]iberal construction does not require a court to conjure allegations on a litigant's behalf" *Erwin v. Edwards*, 22 F. App'x 579, 580 (6th Cir. 2001). To require otherwise "would not only strain judicial resources . . . but would also transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

### III. Discussion

As an initial matter, TreDenick did not fully comply with the directive in the September 26, 2023 Order to separately enumerate his causes of action. He lists "Count one – Breach of Contract"; "Count two – Civil Fraud"; and "Count three – Legal Malpractice" in the first three

paragraphs of his amended complaint without including any supporting facts, but then later asserts additional breach of contract and fraud-related claims. Nonetheless, liberally construing his complaint, I ascertain his claims to be: (1) fraudulent misrepresentation; (2) breach of written insurance contract; (3) constructive fraud; (4) breach of the Mediation Agreement; (5) alleged theft and malpractice by attorney Tallman; and (6) breach of contract/fraudulent misrepresentation/constructive fraud regarding bank liens.

### A. Fraudulent Misrepresentation/Constructive Fraud

In this claim (¶¶ 16–18), TreDenick alleges that, in spite of Fire Marshal Michael Benjamin's investigation findings of no evidence of arson, Nationwide's employee Wayne Karn "falsely and fraudulently" alleged that Benjamin or somebody had found evidence of arson. He further alleges that Karn made these "false and fraudulent arson rumors" to their small farm community, which placed their valid insurance claim in a "bad light."

Nationwide contends that this claim is subject to dismissal because TreDenick fails to allege facts supporting the elements of fraudulent misrepresentation/constructive fraud. Because TreDenick fails to respond to this argument, his claim is properly deemed abandoned. *See Humphrey v. U.S. Attorney Gen.'s Office*, 279 F. App'x 328, 331 (6th Cir. 2008) (a plaintiff's failure to oppose arguments raised in the defendant's motion to dismiss may be treated as waiver as opposition to the motion (citations omitted)); *Doe v. Bredesen*, 507 F.3d 998, 1007–08 (6th Cir. 2007) (finding that the plaintiff abandoned certain claims by failing to defend them in his brief in opposition to defendant's motion to dismiss (citations omitted)). Even if this claim is not considered abandoned, it does not withstand dismissal.

Fraudulent misrepresentation, or traditional common law fraud, requires that: (1) the defendant made a material representation; (2) the representation was false; (3) when the defendant made the representation, the defendant knew that it was false, or made it recklessly, without

knowledge of its truth as a positive assertion; (4) the defendant made the representation with the intention that the plaintiff would act upon it; (5) the plaintiff acted in reliance upon it; and (6) the plaintiff suffered damage. *M&D, Inc. v. McConkey*, 231 Mich. App. 22, 27 (1998). Under Michigan law, a claim for constructive fraud is actual fraud without the element of intent. *Talton v. BAC Home Loans Servicing LP*, 839 F. Supp. 2d 896, 913 (E.D. Mich. 2012). Here, TreDenick fails to allege facts showing that Karn made the alleged statements with the intent that TreDenick would rely on such rumors, nor does he allege any sort of reliance upon such rumors. Thus, this claim is properly dismissed.[1]

### B. Breach of Written Insurance Contract/Constructive Fraud

In this claim (¶¶ 19–24), TreDenick alleges that Nationwide breached the insurance policy in various ways, including failing to replace all of the lost farm equipment and personal property covered by bank liens. Nationwide contends that the breach of contract claim is barred based on the following grounds: (1) the release set forth in the Mediation Agreement; (2) the policy's two-year contractual limitations period; and (3) the doctrine of election of remedies, *i.e.*, TreDenick's decision to cash the settlement check instead of pursuing a claim under the insurance policy. (ECF No. 25 at PageID.406–08.) Based on TreDenick's response, it appears that he concedes that he is not pursuing a claim for breach of contract and/or fraud under the insurance policy. (ECF No. 27 at PageiD.458, 459, 462, and 467.) Regardless, assuming that TreDenick in fact intends to allege a claim under the policy, he fails to respond to Nationwide's arguments set forth above.

First, as Nationwide correctly argues, TreDenick released any claim he had based on the insurance policy when he signed the Mediation Agreement:

> Plaintiffs will release Defendant and all related individuals and entities, from all claims which were alleged, or which could have been alleged, in the Lawsuit and

---

[1] In light of the other grounds for dismissal of the fraud claim, I find no need to address Nationwide's Rule 9(b) argument.

all claims arising out of and/or connected to the loss of Plaintiffs' pole barn and its contents in the fire of March 20, 2017, and/or the insurance coverage for that loss.

(ECF No. 17-5 at PageID.155.) This clear and unambiguous provision covered any claim TreDenick may have had for breach of the insurance policy arising out of the March 20, 2017 fire.

Second, the policy contains a contractual two-year limitations period.[2] (ECF No. 23-1 at PageID.281 ("No one may bring a legal action against us under this Coverage Form unless: . . . [t]he action is brought within two years after the date on which the direct physical loss or damage occurred.").) The Michigan Supreme Court has recognized that an insurer may include a shortened limitations period in its policy unless the provision violates law or public policy. *Rory v. Continental Ins. Co.*, 473 Mich. 457, 470 (2005). Because "Michigan has no general policy or statutory enactment prohibiting the contractual modification of the periods of limitations provided by statute," *Clark v. DaimlerChrysler Corp.*, 268 Mich. App. 138, 142 (2005), an unambiguous contractual limitations period must be enforced as written and will not be invalidated as against public policy. *Id.* Because the loss occurred in March 2017, any claim based on breach of the insurance policy is time-barred. Given the foregoing bases for dismissal of the breach of insurance contract claim, I need not address Nationwide's election of remedies argument.

As noted, TreDenick also mentions constructive fraud in connection with this claim. However, this is nothing more than a label, as TreDenick fails to allege facts supporting the elements of a constructive fraud claim. Thus, this claim must be dismissed.

---

[2] Although the statute of limitations is an affirmative defense and, thus, generally not the proper subject of a motion to dismiss (or for judgment on the pleadings), when "the allegations in the complaint affirmatively show that the claim is time-barred," then "dismissing the claim under Rule 12(b)(6) is appropriate." *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012).

### C. Breach of Mediation Agreement/Constructive Fraud

In this claim (¶¶ 25–31), TreDenick alleges that Nationwide breached the Mediation Agreement by: (1) breaching the confidentiality provision; (2) including attorney Tallman's name on the settlement check; (3) failing to pay bank liens on the farm equipment and property destroyed in the fire.

#### 1. Breach of Confidentiality Provision

The Mediation Agreement contained the following provision:

> This Settlement Agreement, and the terms, conditions, and payments set forth herein, will be kept confidential except as to the parties' attorneys, accountants, tax return preparers, as may be required by the Court, or as may otherwise be required by law.

(ECF No. 17-5 at PageID.155.) TreDenick bases his claim of breach of this provision on attorney Tallman's April 19, 2018 letter to Nationwide's defense counsel, in which attorney Tallman accuses defense counsel of deliberately disclosing the settlement to TreDenick's former counsel and two other attorneys. (ECF No. 17 at PageID.119; ECF No. 17-6 at PageID.159.) TreDenick alleges that Nationwide's disclosure of the settlement to other parties caused him and his farming operation "huge and horrific financial harms and losses of millions of dollars." (ECF No. 17 at PageID.119.)

Nationwide contends that TreDenick fails to allege a breach of the confidentiality provision because attorney Tallman's letter suggests only that Nationwide's counsel disclosed that the parties had settled the matter rather than disclosing the Mediation Agreement or its terms, conditions, and payments. It contends that disclosing the fact of a settlement is different than disclosing the Mediation Agreement or any of its terms. As support, Nationwide cites *Haskett v. Capital Land Services, Inc.*, No. 3:14-cv-279, 2015 WL 12556307 (S.D. Tex. Dec. 9, 2015), in which the plaintiff alleged that the defendants breached a similar confidentiality provision of a

8

settlement agreement by disclosing the existence of the settlement agreement to the Equal Employment Opportunity Commission and others. The provision at issue stated: "The parties shall keep this Agreement confidential and shall not disclose to any third party (other than their employees, attorneys, taxing authorities and tax preparers) the Settlement Sum." *Id.* at *3. The court found no merit to the plaintiff's assertion that the defendants had a duty to keep the existence of the settlement agreement confidential. Instead, it found that the only duty imposed by the confidentiality provision was to keep the settlement amount confidential. *Id.* at *4.

TreDenick responds that Nationwide's counsel breached the confidentiality provision by admitting that he disclosed the Mediation Agreement to another attorney. (ECF No. 27 at PageID.463.) But TreDenick bases this claim on the letter between attorney Tallman and Nationwide's counsel, and this is not what attorney Tallman accused Nationwide's counsel of doing. Rather, he accused defense counsel of disclosing "the settlement," not the Mediation Agreement or its terms. (ECF No. 17-6 at PageID.159.) Nowhere in his letter does attorney Tallman accuse counsel of disclosing the Mediation Agreement to third parties. Thus, as in *Haskett*, TreDenick fails to allege that Nationwide breached the Mediation Agreement's confidentiality provision.

### 2. Inclusion of Attorney Tallman on the Settlement Check

TreDenick next alleges that Nationwide breached the Mediation Agreement, which provided that Nationwide would pay the TreDenicks $950,000, by including attorney Tallman's name on the settlement check. TreDenick alleges that including attorney Tallman's name on the check deprived the TreDenicks of the entire $950,000. (ECF No. 17 at PageID.119.) As Nationwide notes, however, under Michigan law, an attorney who provides services that result in a judgment or fund in favor of the client has a common-law attorney's charging lien on the judgment or fund. *See Bennett v. Weitz*, 220 Mich. App. 295, 297 (1996). "A 'charging lien' is an

9

attorney's equitable right to have the fees due for services secured from the judgment in a particular suit." *Mahesh v. Mills*, 237 Mich. App. 359, 361 (1999) (citing *Franklin Co. v. Buhl Land Co.*, 264 Mich. 531, 532–34 (1933)) (footnote omitted); *see also George v. Sandor M. Gelman, P.C.*, 201 Mich. App. 474, 476 (1993) ("The special or charging lien is an equitable right to have the fees and costs due for services secured out of the judgment or recovery in a particular suit."). Charging liens attach automatically to funds or judgments resulting from the attorney's services. *Id.* at 477. "An attorney's lien is not enforceable against a third party unless the third party has actual notice of the lien or unless circumstances known to the third party are such that he should have inquired as to the claim of the attorney." *Munro v. Munro*, 168 Mich. App. 138, 141 (1988). When a defendant holds funds that are owed to the plaintiff and has notice of an attorney's lien, it must recognize the lien prior to making payment to the plaintiff. *Estate of Tams by Findling v. Auto Club Ins. Ass'n*, No. 332558, 2018 WL 340923 (Mich. Ct. App. Jan. 9, 2018) (Murray, P.J. (concurring)).

Here, Nationwide was merely protecting itself from a potential claim by attorney Tallman for his fees by including his name on the check. Had it failed to do so, it might have been exposed to liability not only for the entire settlement amount, but also for attorney Tallman's fees. If the TreDenicks and attorney Tallman disputed attorney Tallman's right to legal fees or the amount of such fees, such dispute was for them to resolve, not Nationwide. In any event, because the TreDenicks endorsed the check along with attorney Tallman (ECF No. 17-7), TreDenick waived any claim that Nationwide was obligated to make the check payable only to the TreDenicks.

### 3. Failure to Pay Liens

TreDenick also alleges that Nationwide breached the Mediation Agreement by failing to pay liens on the farm equipment and property that was destroyed by the fire. Nothing in the Mediation Agreement indicates that Nationwide agreed to pay anything more than the $950,000

10

settlement amount. Moreover, TreDenick fails to cite any Michigan statute or case holding that an insurer is obligated to pay such liens. Finally, to the extent TreDenick asserts that Nationwide was obligated to pay the liens under the insurance policy, he released such claim pursuant to the Mediation Agreement's release provision.[3]

### D. Alleged Theft and Malpractice by Attorney Tallman

In this claim (¶ 32), TreDenick alleges that Nationwide's inclusion of attorney Tallman's name on the settlement check enabled attorney Tallman to steal money from TreDenick and commit malpractice. This claim fails for the reasons set forth above. In addition, as set forth in the September 26, 2023 Order (ECF No. 15 at PageID.111), TreDenick may allege a legal malpractice claim only against a defendant with whom he had an attorney-client relationship. He had no such relationship with Nationwide. Therefore, this claim fails.

### E. Agreements with TreDenick's Banks

Last, TreDenick alleges that Nationwide's dealings with his banks with liens on the property listed on the insurance policy and in his proof of loss breached the insurance policy and Mediation Agreement and constituted constructive fraud (¶¶ 34–36.). It is not clear why TreDenick believes that Nationwide's "backroom deals" with his banks and creditors was illegal. In any event, even if these allegations are true, TreDenick has not shown why Nationwide's payment of lienholders, including John Deere, breached the insurance policy and/or the Mediation Agreement. Nothing in the Mediation Agreement precludes Nationwide from making payments to lienholders, and it is difficult to see how TreDenick could have been damaged by such payment, including to

---

[3] TreDenick also mentions constructive fraud in connection with the alleged breaches of the Mediation Agreement. As with his other claims of constructive fraud, he fails to identify any representation by Nationwide upon which he relied.

John Deere. Finally, per the Mediation Agreement, Nationwide's liability to TreDenick was capped at $950,000.

## IV.  Conclusion

For the foregoing reasons, I recommend that the Court **grant** Nationwide's Motion for Judgment on the Pleadings (ECF No. 25) and **dismiss** TreDenick's amended complaint **with prejudice**.

Dated: February 26, 2024                                         /s/ Sally J. Berens
                                                                 SALLY J. BERENS
                                                                 U.S. Magistrate Judge

## NOTICE

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within 14 days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).